HARRY F. SALOMON, *ET AL.*, PLAINTIFFS-RESPOND-
ENTS, v. CITY OF JERSEY CITY, A MUNICIPAL COR-
PORATION, DEFENDANT-APPELLANT.

L. O. KOVEN & BROTHER, INC., A CORPORATION, *ET AL.*,
PLAINTIFFS-RESPONDENTS, v. CITY OF JERSEY CITY,
A MUNICIPAL CORPORATION, DEFENDANT-APPEL-
LANT.

Argued March 23, 1953—Decided May 18, 1953.

380

*Mr. Milton B. Conford* argued the cause for appellant (*Mr. John B. Graf*, Corporation Counsel of City of Jersey City, attorney; *Mr. Francis X. Hayes*, of counsel and on the brief).

*Mr. Herbert J. Hannoch* argued the cause for plaintiffs-respondents in *Salomon v. City of Jersey City* (*Messrs. Hannoch, Lasser, Weinstein & Myers*, attorneys for plaintiffs-respondents and for Jersey City Merchants Council, *amicus curiae; Mr. Morris Weinstein*, of counsel and on the brief).

*Mr. George J. Baumann* argued the cause for plaintiffs-respondents in *L. O. Koven & Brother, Inc. v. City of Jersey City* (*Messrs. Wolf & Baumann*, attorneys for plaintiffs-respondents and for Jersey City Chamber of Commerce and Jersey City Real Estate Board, *amici curiae*).

*Mr. Frederic G. Stickel III* (*Mr. Norman Heine*, of counsel), filed brief for New Jersey Institute of Municipal Attorneys, *amicus curiae*.

*Messrs. Shanley & Fisher* (*Mr. Harold M. Fisher*, of counsel; *Mr. J. William Barba*, on the brief), filed brief for New Jersey State Chamber of Commerce, *amicus curiae*.

The opinion of the court was delivered by

JACOBS, J. The fundamental issue presented to us for determination is whether the Legislature, by the general terms of *R. S.* 40:52–1 and *R. S.* 40:52–2, has delegated power to municipalities to impose solely for revenue purposes, license taxes upon all businesses operating within their borders including manufacturers, wholesalers and retailers.

On December 12, 1952 the Board of Commissioners of the City of Jersey City adopted an ordinance "establishing licensing requirements for businesses having a *situs* in the City." It contains no regulatory features whatever and is admittedly a taxing measure designed to raise anticipated revenues of $3,000,000 annually. It provides that wholesalers and retailers shall pay license fees measured by their

gross receipts, manufacturers shall pay license fees measured by their payrolls, and truckers shall pay license fees measured by the· square footage of space occupied by their truck terminals. It provides further for other classifications and license fee bases, for certain exemptions, for· a Business License Bureau and Business License Board of Review, and for other matters which need not be detailed here. On December 13, 1952 Harry F. Salomon and others, retailers located in Jersey City, instituted an action in the Law Division attacking the ordinance for lack of statutory basis, *inter alia,* and seeking a judicial determination of its invalidity. On December 19, 1952 a similar action was instituted by plaintiffs L. O. Koven & Brother, Inc. and others, a manufacturer and real estate brokers located in Jersey City. The status of the plaintiffs to maintain their proceedings as Jersey City taxpayers and citizens or persons who were affected by the terms of the ordinance is beyond question. See *Gurland v. Kearny,* 128 *N. J. L.* 22, 26 (*Sup. Ct.* 1942); *O'Mealia Outdoor Advertising Co. v. Rutherford,* 128 *N. J. L.* 587, 591 (*Sup. Ct.* 1942); *Koons v. Atlantic City,* 134 *N. J. L.* 329, 338 (*Sup. Ct.* 1946), affirmed 135 *N. J. L.* 204 (*E. & A.* 1947). *Cf. Haines v. Burlington County Bridge Commission,* 1 *N. J. Super.* 163, 170 (*App. Div.* 1949); *Garrou v. Teaneck Tryon Co.,* 11 *N. J.* 294, 302 (1953). Before answer, the plaintiffs moved for a stay of the ordinance pending trial and the defendant city moved for summary judgment. The Law Division granted the stay and denied summary judgment. The city appealed from the granting of the stay (*Rule* 4:2–2(*a*)(1)) and pursuant to leave (*Rule* 4:2–2(*b*)) also appealed from the denial of summary judgment. The appeals were consolidated in the Appellate Division and we certified on our own motion. *Rule* 1:5–1(*a*).

██ The power of taxation is a vital attribute of government and is vested in the State Legislature; municipalities being but creatures of the State have no comparable power except to the extent plainly delegated to them by the Legislature. *Jersey City v. Martin,* 126 *N. J. L.* 353, 360

(*E. & A.* 1941); *Jersey City v. North Jersey Street Ry. Co.,* 78 *N. J. L.* 72, 74 (*Sup. Ct.* 1909). *Cf. Edwards v. Mayor, etc., of Borough of Moonachie,* 3 *N. J.* 17, 21 (1949). The bulk of municipal revenues required for their operations are received from general property taxes imposed pursuant to express and comprehensive legislative provisions. *R. S.* 54:4–1; *R. S.* 54:4–9; *R. S.* 54:4–23. These property taxes had their origin in colonial times and have been in effect for over a century in much their present form. See *The General Property Tax in New Jersey, Sixth Report of the Commission on State Tax Policy,* 3, 7 (1953). In recent years there has been considerable agitation for the granting of broader tax powers to municipalities to enable them to meet the tremendously increased costs of governmental services. In response to similar stimuli the Legislatures of our neighboring states have authorized municipalities to impose business taxes based on sales, gross receipts, etc., subject, however, to express statutory provisions and limitations. See 53 *Purdon's Pa. Stat.,* §§ 2015.1–2015.8; *N. Y. General City Law,* § 24a. Our own Commission on State Tax Policy in its report on *Taxation and Public Policy in New Jersey, Fifth Report* (1950) submitted several alternative proposals to our Legislature, including a project to place local governments in a position to finance themselves from bases other than property. A specific method suggested by the Commission (at *p.* 19) in furtherance of this project was "to authorize counties and municipalities to levy, assess and collect such taxes as are suitable for local administration—for example, a consumers sales tax, luxury taxes, gross business tax or income (payroll) taxes." No legislative action has thus far been taken pursuant to this report of the Commission; indeed, no effective legislation has ever been passed avowedly designed to broaden the bases for municipal taxation, except *R. S.* 40:48–8.15 (*L.* 1947, *c.* 71, § 1), which authorized cities of the fourth class to adopt sales taxes subject to express statutory provisions and limitations. See *Karins v. Atlantic City,* 137 *N. J. L.* 349 (*Sup. Ct.* 1948). No fourth-class city other than Atlantic City has ever taken

action under this legislation; and it may be noted that our only state legislation imposing general consumer sales taxes was very short lived. See *L.* 1935, *c.* 268, effective June 11, 1935, repealed by *L.* 1935, *c.* 329, effective October 25, 1935.

■■ Despite the apparent unwillingness of the Legislature to adopt any statute authorizing general municipal taxation other than property, the efforts to tap new sources of municipal revenue continue. In 1947 the City of Trenton adopted its ordinances 504 and 505 under *Title* 40, *Chapter* 52 of the *Revised Statutes* which provides that the governing body may enact ordinances "to license and regulate" a. Vehicles—, b. Autobuses—, c. Cartmen—, d. Hotels—, e. Automobile garages—, f. Theatres—, g. Lumber and coal yards, stores and other kinds of business—, h. Street signs—, i. Auctioneers—, j. Sales advertised as forced sales—, k. Gypsies—, l. Barbershops. See *R. S.* 40:52–1. The succeeding section, *R. S.* 40:52–2, provides that the governing body "may fix the fees for all such licenses, which may be imposed for revenue, and may prohibit all unlicensed persons and places and vehicles, businesses and occupations from acting, being used, conducted or carried on; impose penalties for violation of ordinances providing for licenses, and revoke any license for sufficient cause and after notice and hearing." Trenton's ordinances require wholesalers, retailers and designated trades and professions to obtain licenses. Their titles set forth that they are ordinances "governing, regulating and fixing license fees" of certain businesses, trades and professions, and in section 2 they provide that the fees are for revenue "and for regulation and control." They have never been attacked in judicial proceedings and for present purposes we may assume that they are regulatory ordinances under *R. S.* 40:52–1. Jersey City's ordinance goes much further and stands on a different footing. It is purely a taxing measure without any regulatory aspects whatever and is made applicable to all businesses, including those clearly having intermunicipal and interstate aspects such as manufacturers, and with varying tax bases including gross receipts, payrolls and square footage. Nevertheless, it is

defended by the city as being within the authority afforded by *R. S.* 40:52–1 and *R. S.* 40:52–2, and the issue squarely before us is whether these provisions, read in the light of their history, purpose and context (*Ablondi v. Board of Review*, 8 *N. J. Super.* 71, 75 (*App. Div.* 1950)) may be given any such sweeping effect. See *Grogan v. DeSapio*, 11 *N. J.* 308, 323 (1953); *United States v. Champlin Ref. Co.*, 341 *U. S.* 290, 297, 71 *S. Ct.* 715, 95 *L. Ed.* 949, 955 (1951). The parties have referred us to collateral rules of statutory construction but they acknowledge that in the ultimate the determinative question is whether the Legislature meant, by what it said in *R. S.* 40:52–1 and *R. S.* 40:52–2, to enable the taxing action taken by the city and attacked in these proceedings. *Cf. Newark Aqueduct Board v. Newark*, 50 *N. J. L.* 126, 131 (*Sup. Ct.* 1887); *N. J. Good Humor, Inc. v. Bradley Beach*, 124 *N. J. L.* 162, 164 (*E. & A.* 1940), with *Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 11; *Fred v. Mayor and Council, Old Tappan Borough*, 10 *N. J.* 515, 518 (1952). This issue is of public concern and will be considered here without regard to the suggested limited nature of the contentions advanced by the plaintiffs in the Law Division. See *City of Newark v. Pulverman*, 12 *N. J.* 105, 108 (1953); *Morin v. Becker*, 6 *N. J.* 457, 460 (1951).

In *North Hudson County Railway v. Hoboken*, 41 *N. J. L.* 71, 81 (*Sup. Ct.* 1879), the court dealt with a legislative grant in a city charter of power "to license and regulate cartmen, hackmen, auctioneers, common criers, hawkers, peddlers, junk-shop dealers, junk dealers, venders, porters, hucksters, city railroad cars, dealers in second-hand articles, and scavengers." It found that this was plainly a grant of power for police and not taxation purposes; in reaching its conclusion it pointed out that the phrase "to license and regulate" connoted the object of supervision and control and that the "collocation of trades and employment" likewise indicated that regulation rather than taxation was the object. It struck down the city's ordinance on the ground that the license fees imposed therein on horse-cars were so high as to disclose that taxation was the purpose. Similarly in *Muhlen-*

*brinck v. Commissioners,* 42 *N. J. L.* 364 (*Sup. Ct.* 1880), conviction for violation of an ordinance licensing peddlers was set aside on the ground that although peddlers could be regulated and incidental license fees imposed under delegated police power, the fees actually fixed by the ordinance were for the purpose of taxation rather than regulation. And in *Clark v. New Brunswick,* 43 *N. J. L.* 175 (*Sup. Ct.* 1881), the court likewise set aside a conviction under a peddler's ordinance while indicating that the issue of whether the license fees exceeded the regulatory costs was the proper subject of testimony. See *Kirsch Holding Co. v. Borough of Manasquan,* 24 *N. J. Super.* 91, 99 (*App. Div.* 1952). The *Clark* decision was rendered at the February 1881 term of the Supreme Court and shortly thereafter an "Act respecting licenses in cities" became law. *L.* 1881, *c.* 230. This act authorized the adoption of ordinances "for the following purposes, *viz.,* license and regulate cartmen, porters" and others peculiarly subject to police regulation, and provided that "the fees for such licenses may be imposed for revenue." The plaintiffs contend, with much force, that this last phrase was simply designed to overcome the heavy burden, suggested by the cited decisions, of establishing in every instance that the license fees did not exceed the regulatory costs. In any event, the title and context of the act, particularly the special nature of each of the licensing subjects enumerated, persuasively negate the suggestion that in this casual and indirect fashion the Legislature was delegating an independent and all-embracive taxing power to be exercised without relation to municipal police regulations for the public good.

The 1881 act was amended several years later to list additional subjects of licensing, such as "theatrical performances, plays, exhibitions, concerts, skating rinks, itinerant venders of medicines and remedies and persons professing and practicing the healing art." *L.* 1885, *c.* 243. It seems quite apparent that here the Legislature still contemplated police regulation and licensing in fields which were eminently the proper subjects of local supervision. See

*L.* 1889, *c.* 26; *L.* 1894, *c.* 150; *L.* 1905, *c.* 197; *L.* 1908, *c.* 285; *L.* 1912, *c.* 145. When the Home Rule Act was adopted (*L.* 1917, *c.* 152) it delegated, in Article 15, authority to municipalities to adopt ordinances to license and regulate the various specific subjects referred to in earlier legislative enactments, including the 1881 act as amended. As the brief by the New Jersey Institute of Municipal Attorneys, *amicus curiae*, in support of Jersey City's ordinance concedes, "Every single one of these businesses and other activities which was thus included in the 1917 statute was in its nature a traditional subject for police regulation." The same brief advances the contention that although the pertinent provisions in the Home Rule Act were predominantly for police regulatory purposes, a "decisive change" occurred by the passage of *L.* 1918, *c.* 252 which amended Article 15 to include in paragraph (*d*) the following subjects of licensing and regulation:

> "Lumber and coal yards, stores for the sale of meats, groceries and provisions, drygoods and merchandise, and goods and chattels of every kind, and all other kinds of business conducted in such city other than those herein mentioned, the place or places of business or premises in which or at which the different kinds of business or occupations are to be carried on or conducted, traveling or other shows, circuses, plays, dances, exhibitions, concerts, theatrical performances, and all street parades in connection therewith; and also theatres, show houses, opera houses, concert halls, dance halls, pool or billiard parlors, exhibition grounds, and all other places of public amusement;"

*Cf. L.* 1902, *c.* 107, *p.* 293. The suggestion is that the phrase "all other kinds of business," which was later carried over into paragraph (*g*) of *R. S.* 40:52–1, coupled with the pre-existing provision relating to the fixing of license fees for revenue, later carried over into *R. S.* 40:52–2, displayed a legislative intent to enable broad municipal taxation of all businesses in the manner set forth in Jersey City's ordinance. We are unable to find any such legislative intent or, indeed, any purpose to do more than increase the enumerated regulatory subjects to include other businesses of like kind. This court had recent occasion in *In re Armour*, 11 *N. J.* 257,

273 (1953), to refer to the rule of *ejusdem generis* as "embodying the principle grounded in grammar, logic and reason that associated words and phrases may be looked to for the significance of doubtful words, and where general words follow particular words, in an enumeration describing the subject, the general words are construed to embrace only objects similar in nature to those enumerated by the antecedent specific words." See *Atlantic City Transp. Co. v. Walsh*, 6 *N. J. Super.* 262, 268 (*App. Div.* 1950). As with all aids to statutory construction, this rule is not absolute but serves as a helpful guide in ascertaining legislative meaning; here it imports the view that the specific enumerations, not having exhausted the *genera*, modified and limited the ensuing general clause. *Cf. Independent Warehouses, Inc., v. Scheele*, 134 *N. J. L.* 133, 135 (*E. & A.* 1946), affirmed 331 *U. S.* 70, 67 *S. Ct.* 1062, 91 *L. Ed.* 1346 (1947). In context, the other kinds of business referred to in *L.* 1918, *c.* 252, now paragraph (*g*) of *R. S.* 40:52–1, must be local businesses which may reasonably be considered comparable in type to those specifically enumerated therein, namely, lumber and coal yards and stores for the sale of meats, groceries and provisions, dry goods, merchandise and other goods and chattels. Nowhere in section (*g*) or in *R. S.* 40:52–1 is support to be found for the position that well-known classes of business concerns such as manufacturers, who in the main must be viewed as having predominantly intermunicipal and interstate rather than local aspects, were included *sub silentio* in the regulatory and licensing provisions of the statute.

Indeed, if the Legislature had contemplated Jersey City's far-reaching interpretation of the language in paragraph (*g*), there would have been no purpose whatever to the many specific enumerations in *R. S.* 40:52–1 or to the many enactments which have added individual subjects for licensing and regulation. See *In re Armour, supra,* 11 *N. J.* at *p.* 273: "If the general words are to have their natural meaning, in the abstract, then the antecedent particularization would be utterly vain, for the general class would encompass the particular enumeration." In *L.* 1918, *c.* 252, itself the

regulation and licensing of automobile garages was first added and the following specific subjects were added in the later acts cited herewith: *L.* 1920, *c.* 89—autobuses; *L.* 1926, *c.* 113—auctioneers; *L.* 1927, *c.* 280—transient merchants; *L.* 1929, *c.* 215—motor vehicle junk dealers and dealers in second-hand motor vehicles and parts; *L.* 1941, *c.* 92—gypsies, barber shops, newspaper stands; *L.* 1944, *c.* 245—advertisers of forced sales at reduced prices; *L.* 1948, *c.* 425—trailer camps. *Cf. Edwards v. Mayor, etc., of Borough of Moonachie, supra,* 3 *N. J.* at *p.* 23, where this court held that trailer camps were also properly included within the omnibus language of paragraph (*d*) of *R. S.* 40:52–1 which authorizes the licensing and regulation of hotels, boarding houses, lodging and rooming houses and "all other places and buildings used for sleeping and lodging purposes."

[9] In the light of all of the foregoing we consider that the primary and overriding purpose of the Legislature in enacting *R. S.* 40:52–1 and *R. S.* 40:52–2 was to authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs. *Chapter* 52 of *Title* 40 may be searched in vain for anything sustaining a contrary notion, and the structure and contents of the entire chapter are pregnant with supporting indicia. Its heading is not taxation but simply "Licenses," and it contains repeated references to "license and regulate" and to subjects which fall traditionally within the field of police regulation. See *North Hudson County Railway v. Hoboken, supra.* It excludes municipal licensing of persons holding certain licenses from state agencies, and in *Chaiel v. East Orange,* 136 *N. J. L.* 375, 377 (*Sup. Ct.* 1948), Chief Justice Case, in contrasting the state licenses with municipal licenses under the act, noted that the municipal licensing ordinances "have to do with local police problems and the cost thereof." In *R. S.* 40:52–2 the Legislature provided for revocation of "any license for

sufficient cause and after notice and hearing," a provision predominantly referrable to police licensing. *R. S.* 40:52–3 was repealed by *L.* 1939, *c.* 258, although it originally provided for the summary arrest of unlicensed peddlers; *R. S.* 40:52–4 provides for the licensing of persons selling vegetables, etc., "in any common or public market place within the limits of the municipality"; *R. S.* 40:52–5 and 6 (repealed *L.* 1941, *c.* 151) dealt with dog licenses; and *R. S.* 40:52–1.1 stipulates that licenses for circuses, carnivals or other outdoor shows shall not be issued without prior compliance with the Employer's Liability Insurance Law, a patently regulatory measure.

Notwithstanding what has been expressed, the city strongly urges that there are controlling judicial decisions in our State which have construed the statute to authorize licensing either for regulation or revenue, although it acknowledges that the only instance in which an ordinance was expressly attacked on the ground that it was not designed to regulate was *Becker v. Pickersgill,* 105 *N. J. L.* 51, 55, 56 (*Sup. Ct.* 1928). There the ordinance provided for the examination and licensing of electricians, a subject peculiarly appropriate for police regulation. The court summarily rejected the contention that it was designed for revenue alone, but commented that the Legislature had delegated "not only the power to regulate, but also the power to tax for revenue, and that both of these powers may be unitedly exercised." However, later in its opinion the court noted that the welfare of the community required that certain businesses be regulated to avoid injury to the public and that "the requirement of a license to carry on such businesses or occupations, and the imposition of a tax for revenue are nothing more than the proper exercise of the police power to safeguard the community." More recently Justice Heher in *Independent Warehouses, Inc., v. Scheele, supra,* 134 *N. J. L.* at *p.* 135, likewise referred to a license fee imposed under *R. S.* 40:52–1(*g*) and *R. S.* 40:52–2 as "a license or privilege tax or excise levied for both revenue and regulation under the police power."

It is nevertheless true that many general expressions in our cases seemingly support the view we now expressly reject, that municipal license fees may be imposed under *R. S.* 40:52–1 and *R. S.* 40:52–2, either for regulatory purposes under the police power or solely for revenue purposes under the taxing power without regulatory requirements. See, *e. g., Johnson v. Asbury Park*, 60 *N. J. L.* 427, 429 (*E. & A.* 1897); *Morristown-Madison Auto Bus Co. v. Madison*, 85 *N. J. L.* 59, 61 (*Sup. Ct.* 1913); *Shill Rolling Chair Co. v. Atlantic City*, 87 *N. J. L.* 399, 400 (*Sup. Ct.* 1915), affirmed 88 *N. J. L.* 739 (*E. & A.* 1916), appeal dismissed 245 *U. S.* 674, 38 *S. Ct.* 8, 62 *L. Ed.* 541 (1917); *Lynch v. Long Branch*, 111 *N. J. L.* 148, 150 (*Sup. Ct.* 1933); *Giant Tiger Corp. v. Bd. of Commrs. of Trenton*, 11 *N. J. Misc.* 797, 798 (*Sup. Ct.* 1933), affirmed 113 *N. J. L.* 34 (*E. & A.* 1934). However, in none of the cases was the issue ever actually presented or determined in any manner which might be deemed controlling. Thus, in the *Johnson* case the legislation empowered municipal authorities to pass ordinances to license and regulate owners of vehicles used in connection with any business for the purpose of soliciting orders and delivering goods and to fix the license fees for the purpose of revenue. An attack on the sufficiency of the legislation for alleged defects primarily in its title was rejected; the court was not called upon to construe the legislation on the question of whether it authorized the naked imposition of license fees under the taxing power. In the *Morristown Madison Auto Bus Co.* case the prosecutor operated a motor bus between Morristown and Madison and was convicted for violation of a Madison ordinance for the licensing of hackmen. The conviction was set aside on the ground that the activities of the prosecutor were not within the ordinance as construed by the court. In the *Shill* case the court sustained Atlantic City's ordinance regulating and fixing license fees of designated local businesses. In the *Lynch* case the prosecutor operated a general laundry business with a plant in Asbury Park and was convicted of operating a laundry delivery wagon in violation of a Long

Branch ordinance regulating and fixing fees of mercantile licenses. The court set aside the conviction on the ground that the authorization in the Home Rule Act to license and regulate the businesses described therein and impose license fees for revenue, could not be construed to sustain the ordinance provisions as against a business having its *situs* in another municipality. Finally, in the *Giant Tiger Corp.* case a municipal ordinance providing for license fees for certain food markets was sustained above the contention that its classifications were without proper basis.

The briefs contain additional citations, but no purpose would be served by dealing with them individually; admittedly, none embodies any actual decision on the point. See *Lister v. Lister*, 86 *N. J. Eq.* 30, 43 (*Ch.* 1915). Accordingly, we have considered ourselves free, even under rigid notions of *stare decisis*, to proceed as we have, by seeking and declaring the true meaning of the pertinent legislative phraseology. See *In re Vince*, 2 *N. J.* 443, 455 (1949); *Wright v. United States*, 302 *U. S.* 583, 593, 58 *S. Ct.* 395, 82 *L. Ed.* 439, 445 (1938). In the *Wright* case Chief Justice Hughes, in dealing with an earlier decision of the Supreme Court which was alleged to be controlling, said:

"The Court did not decide, and there was no occasion for ruling, that the clause applies where. the Congress has not adjourned and a temporary recess has been taken by one House during the session of Congress. Any observations which could be regarded as having a bearing upon the question now before us would be taken out of their proper relation. The oft-repeated admonition of Chief Justice Marshall 'that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used,' and that if they go 'beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision,' has special force in this instance. *Cohens v. Virginia*, 6 *Wheat.* 264, 399, 5 *L. Ed.* 257 [290.]"

This much seems entirely clear: the comprehensive municipal license tax imposed without any accompanying regulation by Jersey City's ordinance on all businesses in-

cluding retailers, wholesalers and manufacturers and measured by gross receipts, payroll and footage, has no precedent whatever in our annals and was beyond all legislative contemplation when *Chapter* 52 of *Title* 40 was originally enacted. If it were permitted to stand, other municipalities might readily proceed in like fashion without any prescribed tax limits and with resulting dangers of oppression and the disruption of important and well recognized current policies of our State. Economic conditions and any urgent need for relief to municipalities must receive recognition, but ought come in the form of fair and forthright legislation, framed so that where aid is granted to municipalities it may be accompanied by suitable limitations and safeguards in the interests of the State and all of its people. Despite repeated suggestions to the Legislature for increasing the sources of municipal taxation, that has not been done by any direct tax enactment and may not justly be accomplished in indirect fashion by the tenuous process of interpreting incidental provisions of an ancient statute in a wholly different field. *Cf. Federal Trade Commission v. Bunte Brothers, Inc.*, 312 *U. S.* 349, 61 *S. Ct.* 580, 85 *L. Ed.* 881 (1941); *Western Union Telegraph Company v. Lenroot*, 323 *U. S.* 490, 65 *S. Ct.* 335, 89 *L. Ed.* 414 (1945). We have concluded that the ordinance adopted by the Board of Commissioners of the City of Jersey City on December 12, 1952 was invalid and should be set aside, and that the orders entered in the Law Division must be and are:

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.