**FILED IN CHAMBERS**

**MAY 0 6 2019**

**A TRUE COPY**

JOSEPH M. ANDRESINI, P.J.T.C.

JOSEPH M. ANDRESINI, P.J.T.C
Tax Court of New Jersey

DONALD J. LENNER, ESQ.
ATTORNEY ID: #014501974
11 STATE STREET
HACKENSACK, NJ 07601
(201) 944-3400; FAX (201) 343-3970
ATTORNEY FOR PLAINITFF

JASON NUNNERMACKER,

        PLAINTIFF

        v.

THE CITY COUNCIL OF THE CITY
OF HACKENSACK and THE HACKENSACK
UNIVERSITY MEDICAL CENTER,

        DEFENDANTS

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:  BERGEN COUNTY

DOCKET NO:  BER-L  005974-16

CIVIL ACTION

JUDGMENT GRANTING PARTIAL
SUMMARY JUDGMENT

THIS MATTER having come before the Court upon the Motion of Donald J. Lenner, Esq.,

attorney for the plaintiff, Jason Nunnermacker, for Partial Summary Judgment and the Court having

reviewed the papers submitted in support and in opposition and the argument of counsel; and for good

cause being appearing:

    IT IS ON THIS ___6___ day ___MAY___, 20~~18~~ 2019, ORDERED, that:

A.    Resolution No: ~~245-16~~ 246-16 of the City of Hackensack is hereby set aside; and

B.    Resolution No: ~~245-16~~ 246-16 of the City of Hackensack is hereby declared null and void; and

C.    The City Council of the City of Hackensack, its agents, representatives and/or employees

are hereby permanently enjoined from entering into any agreement granting a real estate tax

exemption, abatement, payment in lieu of tax agreement or other form of tax relief with the

owner of the property commonly known as 20 Prospect Avenue in the City of Hackensack

except as may be expressly authorized or permitted by specific statutory authority.

B.  IT IS FURTHER ORDER that a copy of this Order be served on all counsel within ___7___

days hereof.

_____
                            P.J.T.C.

Hon. Joseph M. Andresini
Superior Court, Law Division, Bergen County
(Temporarily Assigned)

## TAX COURT OF NEW JERSEY

**JOSEPH M. ANDRESINI, P.J.T.C.**
PRESIDING JUDGE



125 State Street, Suite 100
Hackensack, NJ 07601
Tel: (609)815-2922 ex. 54570
Fax: (201)996-8052

### NOT FOR PUBLICATION WITHOUT APPROVAL OF
### THE TAX COURT COMMITTEE ON OPINIONS

May 6, 2019

Donald J. Lenner, Esq.
11 State Street
Hackensack, New Jersey 07601

Steven W. Kleinman, Esq.
Cleary Giaccobbe Alfieri Jacobs, LCC
169 Ramapo Valley Road, UL 105
Oakland, New Jersey 07436

Robert M. Jacobs, Esq.
Winne Banta Basralian & Kahn, P.C.
21 Main Street, Suite 101
Hackensack, New Jersey 07601

> Re:    Jason Nunnermacker v. City Council of the City of Hackensack and
>        Hackensack University Medical Center
>        Docket No. BER-L-5974-16

Dear Counsel:

Having been temporarily assigned by Order of the Chief Justice to the Superior Court, Law Division, Bergen County for this matter[1], this letter constitutes the court's findings of fact and conclusions of law regarding plaintiff's motion for partial summary judgment seeking to invalidate Resolution No: 246-16 of defendant City Council of the City of Hackensack and permanently enjoin this defendant from entering into any agreement granting a local property tax exemption, abatement, payment in lieu of taxes, or other form of tax relief with defendant Hackensack University Medical Center, except as may be expressly authorized or permitted by specific

---

[1] Order dated March 22, 2017.

\*

statutory authority. For the reasons stated more fully below, plaintiff's motion for partial summary judgment is granted.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

The court makes the following findings of fact based on the parties' written submissions as well as oral arguments heard on November 20, 2018 and March 15, 2019. R. 1.7-4. The material facts of this case are not in dispute.

Plaintiff Jason Nunnermacker ("Nunnermacker") is a resident of the City of Hackensack. Defendant the City Council of the City of Hackensack ("City Council"), is a municipal corporation of the State of New Jersey. Defendant Hackensack University Medical Center ("HUMC"), is a not-for-profit corporation of the State of New Jersey. The property at issue is designated as Block 236, Lot 1.02 and commonly known as 20 Prospect Avenue, Hackensack, New Jersey ("subject property").[2] The subject property is currently owned by 20 Prospect Avenue Holdings LLC, a New Jersey limited liability company. This entity was incorporated on June 5, 2015 with HUMC its sole Member/Manager.

On June 28, 2016, the City Council approved Resolution No. 246-16, titled "Resolution of the City Council of the City of Hackensack Authorizing the Execution of a Community Host Agreement with Hackensack University Medical Center for 20 Prospect Avenue." In relevant part, Resolution No. 246-16 states:

> The Mayor and Council and City Manager are authorized to enter into a Host Community Agreement as approved by the City Attorney, to become effective in 2017 wherein lieu of taxes, HUMC will pay to the City the sum of $3,400,000.00 per year with an annual increase of the percentage increase in the total tax levy capped at 2.5% for a term of fifteen (15) years, renewable at the end of the first term for an additional fifteen (15) years upon agreement

---

[2] The subject property is a Class 4A commercial office property which contains approximately 325,000 square feet of various medical and other related offices.

2

by the parties, pursuant to the terms set forth in the Memorandum of Understanding executed on April 25, 2016.[3]

At oral argument, the parties indicated that absent this "Host Community Agreement" (hereinafter "the Agreement"), the local property taxes levied on the subject property for 2017 would have been $4,712,700 based on the 2017 assessment of $138,000,000.

On August 12, 2016, Nunnermacker filed a complaint in Lieu of Prerogative Writs with the Superior Court of New Jersey challenging the legality of Resolution No. 246-16. The complaint maintained that the City Council acted without authority in effectually exempting the subject property from real estate property taxes. Nearly two years later, on February 12, 2018, Nunnermacker moved to amend the original complaint setting forth the right to request counsel fees and costs, which was granted by this court shortly thereafter.[4]

On September 27, 2018, Nunnermacker filed the instant motion for partial summary judgment seeking an Order from this court: (1) "permanently enjoining the [City Council], its agents, representatives or employees from entering into any agreement granting a real estate tax exemption, abatement, payment in lieu of tax agreement or other form of tax relief with the owner of the [subject property] except as may be expressly authorized or permitted by specific statutory authority"; (2) "[s]etting aside" Resolution No. 246-16; and (3) holding Resolution No. 246-16 "null and void."

In support of the motion, Nunnermacker argues that the City Council was without legal authority to enter into the Agreement because such action, absent a general statute, is not

---

[3] Although the Agreement was approved by the City Council on June 28, 2016, it has not yet become operative. Accordingly, the subject property is being assessed and taxed as any other commercial property.

[4] Nunnermacker's motion for partial summary judgment did not raise issues of counsel's fees and costs. Therefore, the court will not address same as a part of the instant motion.

3

authorized by the New Jersey Constitution. In other words, the City Council acted without any statutory authority when it granted HUMC a tax exemption and "voluntarily gave away $1,312,700 in tax revenue on the mere speculation that HUMC would have filed a tax appeal."[5] Moreover, Nunnermacker contends that the City Council "usurped" the municipal tax assessor's statutory duty to value property and determine whether property is tax exempt by passing Resoluton No. 246-16. Nunnermacker concludes that the City Council's "attempt to portray this grant of exemption as payment in lieu of taxes under the guise of a 'Host Community Agreement' must fail."[6]

The City Council and HUMC duly opposed Nunnermacker's motion. The City Council makes three arguments. First, Nunnermacker's motion fails to comply with our New Jersey court rules because it did not include a statement of material facts.[7] Second, the City Council's decision to enter into the Agreement was a reasonable, rational act pursuant to its inherent statutory and constitutional powers. The City Council states that the Agreement "reflects an arms-length transaction negotiated by the City with HUMC to mitigate what the City's elected representatives and appointed officials believed was a clear and present danger to the City's tax base – that after HUMC assumed ownership of [the subject property], as a non-profit entity it was likely to seek an exemption from property taxes for much, if not all of the premises." By entering into the Agreement, the City Council "guaranteed it would receive [$3,400,000] per year, plus annual increases of up to 2.5%, while providing certainty that it would not be risking a devastating blow

---

[5] Plaintiff sees it fit to add that "nowhere is there any indication what the tax impact would have been had HUMC been successful in that tax appeal" and that "[a]t best, assuming HUMC is otherwise entitled to tax exempt status, that exemption would be limited."

[6] Plaintiff also argues, arguendo, that even if the City Council had the power to exempt the property from taxation, it misapplied the law on exemption. Because the court finds that the council did not have such power, it is not necessary to address this argument.

[7] See R. 4:46-2(a).

4

to its tax base." Third, the Agreement it negotiated is consistent with accepted practice in New Jersey as a "commonly-accepted and lawful voluntary agreement between a municipality and a non-profit entity claiming tax exempt status." According to the City Council, in such agreements, the non-profit entity agrees to make annual voluntary payments in consideration for municipal services. The City Council further notes that "numerous hospitals throughout the state are making such contributions rather than litigating over their tax-exempt status."

HUMC first argues that since Nunnermacker's complaint is an action in Lieu of a Prerogative Writs, the court must, pursuant to R. 4:69-1, analyze the instant motion under an "arbitrary, capricious or unreasonable" standard. To HUMC, the question before the court is whether the City Council acted in an arbitrary, capricious or unreasonable manner when it negotiated and executed the Memorandum of Understanding, pursuant to which it entered into the Agreement with HUMC and adopted Resolution No. 246-16. HUMC's position is that Nunnermacker "has failed to meet the high burden of proof" and failed to demonstrate that the City Council's action was either arbitrary, capricious or unreasonable. Second, mirroring the City Council's second argument, HUMC contends that as parties to a prior Developer's Agreement, the City Council and HUMC were "free to amend the terms of that contract, or enter into a superseding agreement." Third, Resolution No. 246-16 "is not, either in form or in substance, an action authorizing an exemption of the property from taxation, nor is it tantamount to an exemption." Fourth, the New Jersey Constitution and the statute, N.J.S.A. 40A:48-2, "clearly afford to [the City Council] the right to act in the best interests of both the municipality and its citizens, in this case by resolving, and thus avoiding, the substantial likelihood of protracted litigation over the tax

5

exempt status of a significant ratable, and to have made a reasoned judgment that, ultimately a partial exemption would be granted under N.J.S.A. 54:4-3.6."[8]

In response, Nunnermacker claims that his omission of a Statement of Material facts is a "minor" procedural deficiency and that "the requirement of strict adherence and resubmission would be contrary to the goal of judicial economy." Further, Nunnermacker also charges that the oppositions of both defendants ignore the plaintiff's argument that the City Council's action "was an *ultra vires* act in violation of the New Jersey Constitution and the general laws of the State, and without lawful foundation." Nunnermacker characterizes defendants' arguments concerning the reasonableness of the City Council's actions as "an attempt to shift the focus" from the *ultra vires* nature of Resolution No. 246-16.

Finally, the court heard oral argument on this matter. After finding that Nunnermacker's failure to include a Statement of Material Facts was not so serious a procedural deficiency as to merit the dismissal of his motion, the court allowed the motion to proceed.

## CONCLUSIONS OF LAW

### I. This Matter Can be Disposed of by Way of Summary Judgment Motion

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). An genuine issue of fact exists "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all

---

[8] HUMC did not file a local property tax appeal for tax year 2016, thus, did not claim local property tax exemption for this year. HUMC filed an appeal for tax year 2017 challenging both the valuation of the subject property, and claiming its exemption from local property tax. HUMC has since withdrawn its count as to exemption.

6

legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

Although the evidence is to be viewed most favorably toward the non-moving party, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540-41 (1995). Rather, denial is only appropriate where the evidence is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 540.

Here, no genuine issue of material fact exists in the record to preclude summary judgment and one party is entitled to judgment as a matter of law. Despite defendants' desire to frame it as such, the issue here is not whether the act of the City Council was arbitrary, capricious or unreasonable. Rather, the sole issue is whether the City Council had legal authority to enter into the Agreement in the first place by passing Resolution No. 246-16. Therefore, the court finds that this matter is ripe for summary judgment. See e.g. D'Anastasio Corp. v. Twp. of Pilesgrove, 387 N.J. Super. 241, 245, (App. Div. 2006) (prerogative writ complaints involving purely legal issues can be decided by summary judgment); Willoughby v. Planning Bd. of Twp. of Deptford, 306 N.J. Super. 266, 275 (App. Div. 1997) (". . .[w]here a prerogative writ action challenges governmental action which is not based on an administrative record developed in a quasi-judicial hearing or seeks performance of a ministerial duty, the usual procedures for the disposition of civil actions, including summary judgment practice, may be employed.").

**II. The City Council Usurped the Role of the Municipal Tax Assessor by Determining the Local Property Tax Assessment for the Subject Property and by Granting HUMC the Equivalent of a Partial Tax Exemption without any Legal Authority to do so**

    **1. The City Council Improperly Re-Determined the Subject Property's Local Property Tax Assessment for Tax Year 2017**

7

"[A] municipality is a creature of the Legislature, and as such is a government of enumerated powers which can act only by delegated authority." Inganamort v. Borough of Fort Lee, 72 N.J. 412, 417 (1977) (citations omitted). The powers of municipal corporations formed for local government are limited to: (1) those granted in express terms; (2) those that arise by necessary or fair implication, or incident to the powers granted in express terms; and (3) those that are essential. N.J. Const. art. IV, § VII, ¶ 11; see also N.J. Good Humor, Inc. v. Bd. of Comm'rs, 124 N.J.L. 162, 164 (E. & A. 1940). The power to tax belongs to the State; municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power. Salomon v. Jersey City, 12 N.J. 379, 383-84 (1953). In Salomon, Jersey City adopted an ordinance requiring all businesses having a situs in the City to become licensed and pay a substantial fee to do so. Id. at 382. The ordinance contained no regulatory features whatsoever and was "admittedly a taxing measure designed to raise anticipated revenues of $3,000,000 annually." Ibid. Our Supreme Court noted that municipalities do not have the authority to raise general revenue except through "property taxes imposed pursuant to express and comprehensive legislative provisions." Id. at 384. Viewing the licensing arrangement as an impermissible attempt to tax without Legislative authority, the ordinance was deemed invalid. Id. at 392-94.

A tax assessor acts as both an agent of the Legislature as well as an employee of the hiring municipality. Jeffers v. City of Jersey City, 8 N.J. Tax 313, 317 (Law Div. 1986), aff'd 214 N.J. Super. 584 (App. Div. 1987). "The power of taxation is exclusively a legislative function." Arace v. Irvington, 75 N.J. Super. 258, 266 (Law Div. 1962). Accordingly, "when assessing property, the assessor performs a governmental function and acts as an agent of the Legislature." Ibid. At the same time, however, the tax assessor is also an employee of the hiring municipality. Mitchell v. City of Somers Point, 281 N.J. Super 492, 499-500 (App. Div. 1994). While a municipal

8

employee, an assessor is subject to supervision by Taxation and the county board of taxation. N.J.S.A. 54:1-25; 54:3-15.

It is mandatory for a municipality to appoint a tax assessor. N.J.S.A. 40A:9-146. The tax assessor's duty is to "determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract . . ." N.J.S.A. 54:4-23. By statute, the tax assessor is "charged to fulfill that duty by valuing real property in the municipality 'without favor or partiality.'" Carlson v. City of Hackensack, 410 N.J. Super. 491, 499 (App. Div. 2009) (quoting N.J.S.A. 54:4-36). "In determining property values, assessors, like judges, should perform their duties without fear or favor. Their quasi-judicial duties should be exercised free of pressure and harassment." Arace, 75 N.J. Super. at 269. The Legislature established a statutory framework to keep assessors free from local interference. Ream v. Kuhlman, 112 N.J. Super 175, 189-91 (App. Div. 1970). Once the assessor sets the assessment for a property, "the municipality collects taxes based on that assessment and defends the assessment on any appeal to the county board of taxation or Tax Court." General Motors v. City of Linden, 279 N.J. Super. 449, 468 (App. Div. 1995).

Here, Hackensack's tax assessor fulfilled his constitutional and statutory duties by determining an assessment of $138,000,000 on the subject property for tax year 2017. HUMC would have had to pay a $4,712,700 tax bill based on this assessment. Through adopting Resolution 246-16, the City Council circumvented these determinations and decided that HUMC would instead make a $3,400,000 payment for the tax year. Despite this payment's designation as being "in lieu of taxes," the City Council usurped the assessor's functions by effectively overriding his determination of the subject property's tax, and thus, of the subject property's assessment. HUMC did not file a local property tax appeal before either the Bergen County Board of Taxation

9

or the Tax Court for tax year 2016, and thus, did not claim local property tax exemption for this year. HUMC has filed for tax year 2017 both challenging the valuation of the subject property and claiming exemption. HUMC has since withdrawn its complaint claiming exemption. In any event, the City Council had no legal authority to compromise with HUMC and re-determine the assessment for the relevant tax year. It was the duty of the tax assessor alone – not the City Council – to make a determination of value on the subject property. The court finds that the municipal tax assessor's "quasi-judicial" duties were not only interfered with, but patently usurped, by the City Council. The City Council's argument that it went down this route only to deflect or avoid HUMC's appealing the assessment and obtaining a tax exemption does not excuse the lack of legal authority with which it acted.

Additionally, like Jersey City's attempt at taxation disguised as licensing ordinance in Salomon, the City Council's imposition of a $3,400,000 tax via Resolution No. 246-16 and the Agreement with HUMC constitutes an effort to raise tax revenue in the total absence of legal authority. In Salomon, Jersey City specified a group of taxpayers – all businesses having a situs in the city – to pay a licensing fee intended to raise $3,000,000 in revenue. Whereas here, the City Council hand-selected a single taxpayer for a $1,312,700 abatement[9] intended to guarantee $3,400,000 in revenue for Hackensack. Despite that the City Council's actions in the present matter represent the inverse of Jersey City's in Salomon, the legal theory remains consistent: municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power.

---

[9] Based on the assessment of $138,000,000 on the subject property for tax year, HUMC would have had to pay a $4,712,700 tax bill. By circumventing the assessor and imposing a tax of $3,400,000 via Resolution No. 246-16 and the Agreement with HUMC, the City Council effectively granted HUMC a $1,312,700 tax abatement. See infra pp. 11-13.

10

**2. The City Council Granted HUMC the Equivalent of a Partial Tax Exemption**

Just as it is only an assessor who can set the assessment of real property, generally exemptions from taxation are also to be determined and administered by the assessor and the assessor alone. Secaucus Town v. Jersey City, 19 N.J. Tax 10, 37 (Tax 2000).[10] The only lawful statutory authority for a governing body to act with regards to an exemption under N.J.S.A. 54:4-3.6 is with respect to a refund of taxes to an exempt charitable or religious entities under N.J.S.A. 54:4-3.6c.

The Agreement between the City Council and HUMC in the current matter is tantamount to a partial tax exemption. The subject property was assessed at $138,000,000 for tax year 2017. Absent Resolution 246-16 and the Agreement, the taxes levied on the subject property would have been $4,712,700. Instead, the Agreement determined that HUMC would pay "in lieu of taxes," the specific sum of $3,400,000 per year "with an annual increase of the percentage increase in the total tax levy capped at 2.5% for a term of fifteen (15) years, renewable at the end of the first term for an additional fifteen (15) years upon agreement by the parties." Effectively, then, at least for tax year 2017, the City Council granted HUMC a tax abatement of $1,312,700. Thus, and presumably based on HUMC's ability to claim a full tax exemption for the subject property, the City Council granted the subject property a partial tax exemption. Without any determination by the assessor as to whether the subject property is exempt or otherwise qualified for an abatement, the City Council again usurped the assessor's statutory duty in this regard by deciding to grant HUMC a tax abatement/partial tax exemption pursuant to the defendants' deal.

---

[10] However, pursuant to certain statutes, local property tax exemptions can be granted by a municipality such as the Long Term Exemption Law, N.J.S.A. 40A:20-1 et seq., or the Five-Year Exemption and Abatement Law, N.J.S.A. 40A:21-1 et seq. No such statute is involved here.

11

**3. The City Council had no Legal Authority to Grant HUMC the Equivalent of a Partial Tax Exemption**

The New Jersey Constitution requires that all real property must be assessed for taxation under general laws and by uniform rules. N.J. Const. art. VIII, § I, ¶ 1. Just as all property must be assessed under general laws and by uniform rules, exemption from tax must only be granted by general laws. Id. ¶ 2; see also Twp. of Teaneck v. Lutheran Bible Inst., 20 N.J. 86, 90 (1955) (citation and quotation omitted). The New Jersey Legislature "may enact general laws under which municipalities may adopt ordinances granting exemptions or abatements from taxation on buildings and structures in areas declared in need of rehabilitation in accordance with statutory criteria . . . " Id. ¶ 6. For example, N.J.S.A. 40A:20-1 and N.J.S.A. 40A:21-1 allow municipalities to enter into annual Payments in Lieu of Taxes ("PILOTs") with developers to facilitate community growth in blighted areas. Along similar lines, under the Solid Waste Management Act, the owner or operator of a sanitary landfill facility may lawfully enter a host community benefits contract with a municipality for the receipt of annual sums of money in lieu of taxes on the land used for a landfill within said municipality. See N.J.S.A.13:1E-28.

Neither the City Council nor HUMC can cite to case law or a single statute authorizing the partial tax exemption equivalent that the City Council granted HUMC by way of Resolution No. 246-16. Upon its own review of statute and case law, this court likewise cannot identify any legal authority whatsoever that would allow for defendants to enter into the Agreement. The Agreement cannot be sustained as part of a statutorily authorized PILOT arrangement because the granting of an exemption in such a situation must be: (1) pursuant to an ordinance, not a resolution; and (2) only in an area declared to be in need of rehabilitation, which the subject property is not. Moreover, despite the fact that the defendants refer to their arrangement as a "Host Community

12

Agreement," the actual substance of the Agreement has nothing at all to do with the management of solid waste and/or the operation of a landfill pursuant to a legal host community benefits agreement.

In their attempt to shift the focus from the allegation of the City Council's *ultra vires* act, defendants claim that the analysis must be on the reasonableness of that act. It is not necessary for the court to address the underlying motivations of either defendant in entering into the Agreement. There is no law in the State of New Jersey that allows for a hospital and the municipality in which it is situated to enter into such an agreement in anticipation of a future tax appeal.

## III. The Agreement is Analogous to Illegal Contract Zoning

Like the lack of power to tax, "municipalities have no power to zone except as delegated to them by the Legislature." Taxpayers Ass'n of Weymouth Twp. v. Twp. of Weymouth, 80 N.J. 6, 20 (1976). This delegation of power is embodied in the Municipal Land Use Law. N.J.S.A. 40:55D-1 to -92. "A municipality has no power to circumvent these substantive powers and procedural safeguards by contract with a private property owner." Warner Co. v. Sutton, 274 N.J. Super. 464, 471 (App. Div. 1994). If a municipality wants to allow a deviation from the permitted uses under a zoning ordinance, "it must either amend the ordinance or follow the necessary procedures for granting a variance; it cannot short cut these procedures and permit the . . . use by means of . . . a contract with the landowner." Ench v. Pequannock, 47 N.J. 535, 539 (1966). "Zoning is an exercise of the police power to serve the common good and general welfare." V.F. Zahodiakin Engineering Corp. v. Zoning Bd. of Adj., 8 N.J. 386, 394 (1952). The "legislative function may not be . . . curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts." Ibid. Such "contract zoning" is *ultra vires*, "and all proceedings to effectuate it [are] . . . utterly void." Id. at 395.

13

In <u>Midtown Properties, Inc. v. Madison</u>, 68 N.J. Super. 197, 202 (Law Div. 1961), aff'd

o.b., 78 N.J. Super. 471 (App. Div. 1963), the property owner obtained preliminary subdivision

but before final approval was granted, the municipality amended its ordinance upgrading lot-size

requirements. Consequently, final approval was denied, litigation ensued, and the property owner

and the municipality eventually settled incorporating the settlement terms into a consent judgment.

68 N.J. Super. at 203. After the municipality refused to follow the terms of the consent judgment,

the property owner moved to enforce it. The Court denied the motion concluding:

> This contract, on its face, is illegal and void. It is an attempt to do
> by contract what can only be done by following statutory procedure.
> The zoning power delegated by the Legislature to the township
> officials was prostituted for the special benefit of the plaintiff.
> Certainly, if the contract is illegal and void, having it incorporated
> in a consent judgment will not breathe legal life into it.
>
> . . . .
>
> A municipality in exercising the power delegated to it must act with
> such delegated power and cannot go beyond it. Where the statute
> sets forth the procedure to be followed, no governing body, or
> subdivision thereof, has the power to adopt any other method of
> procedure.
>
> [<u>Id.</u> at 206-07.]

The Agreement between the City Council and HUMC is analogous to illegal contract

zoning in that the City Council went beyond its delegated power for the special benefit of HUMC.

Like the parties in <u>Midtown Properties, Inc.</u>, the defendants here attempted to do by contract what

can only be done by the municipal assessor – that is, set a tax assessment on and determine that

the subject property is entitled to a partial tax exemption, and tax abatement of $1,312,700. .

## IV. The Agreement Violates the Principles of Equal Protection

All real property must be assessed according to the same standard of value. <u>N.J. Const.</u>

art. VIII, § I, ¶ 1. Taxpayers must be treated in a manner comparable to other similarly-situated

14

taxpayers. Twp. of West Milford v. Van Decker, 120 N.J. 354, 361 (1990). Further, the equal protection clause of the Fourteenth Amendment to the United States Constitution "protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." Id. at 362-63 (quoting Baldwin Constr. Co. v. Essex Cty. Bd. Of Taxation, 16 N.J. 329, 341 (1954)). "The dominant principle of the [New Jersey] Constitution's uniformity clause is to mandate equality of treatment and burden." Regent Care Center, Inc. v. Hackensack City, 362 N.J. Super. 403, 415 (App. Div. 2003).

The City Council violated basic principles of equal protection by hand-selecting the City's "second largest taxpaying property"[11] and its owner, HUMC, for favorable tax treatment. While every other taxpayer situated in Hackensack has to have their property assessed for taxation in accordance with the normal assessment procedure, the City Council exclusively invited HUMC to the negotiation table so that it could help select its own tax bill for years to come. Any other taxpayer wishing to reduce their property tax assessment would have had to file a tax appeal and spend time and money to arrive either at a settlement or determination of value following trial in the Tax Court.[12] Had HUMC filed a tax appeal for the year in question (2016), the defendants could have easily settled their case for the dollar amount present in the Agreement. However, and curiously to this court, such action did not occur. Absent a general statute granting the contrary, the City Council had no power to grant HUMC a partial tax exemption through way of resolution. This court now finds that the City Council specifically chose HUMC for more favorable tax

---

[11] As stated by Hackensack Chief Financial Officer James Mangin in his signed Certification dated November 1, 2019.
[12] Assessments in excess of $1,000,000 can be directly appealed to the Tax Court without need to first file a petition before a county board of taxation. See N.J.S.A. 54:4-21(a).

15

treatment than other Hackensack taxpayers in violation of New Jersey constitutional principles of equal tax treatment and equal tax burden.

## CONCLUSION

For the reasons stated above, the court grants Nunnermacker's motion for partial summary judgment. The court will enter an Order (1) permanently enjoining Hackensack, its agents, representatives or employees from entering into any agreement granting a real estate tax exemption, abatement, payment in lieu of tax agreement or other form of tax relief with the owner of the subject property except as may be expressly authorized or permitted by specific statutory authority; (2) setting aside Resolution No. 246-16; and (3) holding Resolution No. 246-16 null and void.

Very truly yours,

Hon. Joseph M. Andresini
Superior Court, Law Division, Bergen County
(Temporarily Assigned)

16